We will hear argument next in 18-2289, Intellectual Ventures I v. EMC. Mr. Milken. Good morning, your honors. May it please the court. I'd like to begin today with our argument concerning the allocating limitation of Claim 13 and then move on to claim construction and the other issues addressed in our brief. It's settled law that an IPR petitioner must make its case in the IPR petition. The petition must identify where specifically in the prior letters. Both petitions say something about allocating, the Ocean Store one a little bit more, the Carter one it's maybe a sentence, and what they do is I'm just going to call it incorporate by reference material that both petitions set out in discussing one of the other limitations. Why is that not enough if the substance of that material does the trick? It's not enough because the allocating limitation of Claim 13 is not contained in Claim 1, which is the claim that the petitioner... No, but don't both of them say, and let's just talk about the Ocean Store one. I think maybe there's an extra two sentences or something. It says, for the reasons we described when talking about the, what's the other limitation? The assessing and representing limitation. This is also allocating because why in the world would you decide what's available without reserving it? Reserving the space. If you're going to incorporate by reference in that fashion, then I think you must explain why this separate limitation that again is not included in Claim 1 is either inherent in or perhaps rendered obvious by the assessing limitation or the representing limitation. And that's what the petitions didn't do. They didn't establish a link between what Claim 1 says about assessing and representing, and then what Claim 13 says about allocating, because Claim 13 also talks about assessing and representing. And so the natural inference would be that allocating is supposed to mean something different, something beyond assessing and representing. And if that's not true, if BMC's position is that's not the case, they need to explain why that's not the case and explain why allocating is sort of necessarily encompassed in this idea of assessing. Are we reviewing the strength of the petition? Are we reviewing the fact findings in the final written decision? What we're asking this Court to review is the Board's decision to find Claim 13 unpatentable based on petitions that have no substantive discussion of the limitation at all. The Board did cite things for its discussion of the allocating limitation in the final written decisions, but the things it cited were arguments and evidence that EMC had presented for the first time in reply. And our point is that's improper under the statute. Section 312A.3 requires that the arguments and the evidence be in the petition, and then the PTO's implementing regulation says with even more specificity that the petitions have to specifically identify where in each prior art reference the disclosure is found. And that's what was lacking here. I'm not sure if this was encompassed in your Honor's question, but our quarrel is not with the institution decision with the finding that EMC had shown that at least one claim was a reasonable probability that it was unpatentable. Our quarrel is with in the final written decision finding Claim 13 unpatentable based on this ground that it simply wasn't explained in the petition. And just to touch a little more on what was exactly said in the petitions, in the Carter petition, this is at Appendix 828, they simply refer back to their discussion of Claim 1, which again does not contain the allocating limitation. In the Ocean Store petition, this is at Appendix 249, this is the discussion of their anticipation grounds. And there's no analysis other than referring back to Claim 1 and then citing their expert's testimony. And the expert's testimony is what, 1370 to 1372 that they're citing? I believe that it's at Appendix 1386. Okay, Paragraph 138? Yes, Your Honor. And that is? That refers back to Paragraphs 102 to 104. Which is a discussion, I believe, of the assessing limitation. But the expert's declaration, this Paragraph 138, is essentially a copy, almost verbatim, of what is said in the petition itself. And just like in the petition, the expert does not explain the connection between the assessing and representing limitations of Claim 1 and the allocating limitation of Claim 13. Well, how would you understand the substantive distinction between the allocating limitation and then the assessing and representing limitations? These are all a little bit vague, these terms, and I don't think they're precisely defined in the specification. Well, I think we would agree with the definition of allocating that Petitioner's expert gave below, which was essentially you lock down a certain amount of storage resources so you know that those aren't going to be taken over by the local node, and you know that you can offer these resources to the system. Whereas assessing is sort of a more passive activity of simply seeing what's available. It doesn't mean that just because you've assessed to see what's available that you necessarily have allocated something to make sure that it's going to be available. I mean, this is something like the car rental place says, we have seven cars available. You hang up. Right, because you're not necessarily going to have one when you get there, precisely, Your Honor. And the representing limitation, to use Your Honor's hypothetical, the representing limitation would be the car rental agent telling you, I can represent that I have seven cars available, and that's separate from the rental car's, the agent's assessment of how many cars he or she has available, and also separate from the further act of, okay, you want this one car, I will allocate this car for you, and so you know it's going to be there when you show up. I was going to just ask, how do you think OceanStor operates? I mean, doesn't it operate by managing and making available unused storage space in all these different pool devices, these nodes? The description of the OceanStor system in the reference itself is very high level, and so there are not a lot of details provided about how it operates. I guess what I'm wondering is, how would it work if it didn't lock down unused space to make it available to be a pool device where its unused data storage space can be used by other devices? Because again, it wouldn't necessarily be, if you take Petitioner's Expert's definition of allocating as walking down storage resources so they're not available for the local node to use. OceanStor could make resources available without doing that, because it could simply find, oh, we have these resources on nodes X, Y, and Z that just happen to not be in use, even though they haven't been necessarily allocated for that purpose, and we can store the system's information on those nodes. Is there anything in OceanStor that deals with the possibility that in the interval of time between I've got space available and a user sending the information, the available space disappears, and then what to do? There's no discussion in the reference of how that process works, and that's sort of our point. Given how high level the description of the OceanStor system is, we know that the goal is to make storage resources of these various nodes available, but we don't know how the system does that. We don't know how they decide. Right, the goal is to be available and actually usable. Doesn't that suggest a kind of immediate obviousness of locking down when you're advertising something? Perhaps, but even if it does, I would dispute the premise, but even if your view is that it does suggest this allocating function where you're locking down resources, the point is EMC needed to explain that in its petition, and because it didn't, IV was left to essentially shoot in the dark in response because we had... So doesn't, forgive me if I'm confusing cases, doesn't EMC say, well, we didn't have to say any more than your own patent had to say in its specification for written description support? It doesn't say anything about allocating beyond, because it's perfectly evident in a system whose function is the function of this system that you really want the storage that's advertised to be available when somebody tries to put something in it. I think that's incorrect that the petitioner's burden is somehow lessened by the fact that according to them, the specification doesn't say very much about allocating. What they are trying to do, in effect, is shift the burden to us and say, oh, your specification doesn't say much about allocating, so therefore you have to explain why allocating wouldn't... I guess, I mean, partly maybe as a matter of precedent, I tend to think of it in the, sometimes this comes up in enabled anticipation where it's, I think, a reasonably familiar point to be made that it's a little hard for the patent owner to say, that this anticipatory reference is not enabled if the amount of enabling is at least as much as you find in the patent itself. Why is that not a sound, logical point about whether there's enough in the petition here to support the allocating once you have a description of the assessing for this purpose? Well, I think, Your Honor, I'd go back to the point that if that was their argument, that allocating was so well-known that it didn't need to be described in the specification, and so it also didn't need to be described in particular much detail in their petition, they needed to say that in the petition, but they didn't. These arguments about how the specification doesn't say much about allocating and therefore we didn't say much either, those were arguments that came up in reply. Didn't you challenge their reply as containing new arguments? And the board's response to that was that, no, these are proper rebuttal arguments, this is okay. So doesn't that undercut your argument that there had to be more in the petition? I don't think so, Your Honor, because what the board said was these arguments are fine because they are responsive to what was said in the patent owner response. They were responsive in the sense that we said the petitions don't have any explanation for why the allocating limitation is satisfied. It's not satisfied for all of these reasons. And then they came back and they said, no, you're wrong. The references do disclose allocating and they cited new disclosures and made new arguments. That's responsive in a sense, but it's not responsive in a sense that makes a reply proper, because if that were permitted, then a petition could simply say, Ocean Store anticipates claims 1 through 10. The patent owner could come back and say, no it doesn't and here's why. And then the petitioner could just introduce all of their evidence in reply. So responsiveness is necessary, it's not sufficient. That's a more extreme example though that you've given, right? It's a much more extreme example than what we have here. It's perhaps a little more extreme, but the fact remains that there's a limitation that was essentially ignored. They incorporated by reference an argument from a claim that does not contain that limitation. Relying on the same evidence. Relying on the same evidence, but I'd say again, there needs to be a link. I'm not saying it necessarily has to be an extensive link, but there has to be some connection articulated between the assessing and representing actions. What standard of review do we apply? I mean, we've got a decision from the board saying, no, no, this is a proper reply argument. Is that reviewed for an abuse of discretion? I think I would answer that in two parts. My first answer would be, this should be de novo, because our contention is that the board violated Section 312.83 and its implementing regulation by relying on arguments not in the petition to find claims unpatentable in the final written decision. However, even if you were to look at it through an abuse of discretion prism, then an error of law, which here, finding claims unpatentable based on arguments outside of the petition, that is by definition an abuse of discretion. So I think whichever way you approach it, you kind of end up at the point where there's been a legal error committed here, and reversal is appropriate. When it comes to allocating, and Dr. Kaye's paragraph 138 refers back to paragraphs 102 and 104, and paragraph 104 says, towards the bottom, in short, ocean floor software makes it possible to distribute devices in the pools, and forming the ocean appear to be or mimic NAP devices, and then it does so, comma, by making available and providing those excess data storage resources to other network-connected devices. So why isn't that basically the same thing as allocating? When it says, when he says that ocean store teaches making available and providing those excess data storage resources to other network-connected devices. Your Honor, the statement that you're referring to, making available and providing excess data storage resources to the devices, that's simply what it means to mimic a NAD device, which is already recited in the claim. The idea of having a device that actually is used for some other purpose, but it mimics a NAD device by making. But what I'm wondering is, why isn't it that when the reference is alleged to make unused space available at the NAD storage, why doesn't that fit within the allocating limitation? Why doesn't that track the allocating limitation? Our position would be it doesn't track, necessarily track the allocating limitation because there's no indication here that those resources have been locked down in the words of petitioner's experts, so they don't get taken over by local node use. But again, I'd come back to the point, it wasn't our burden to explain why ocean store doesn't disclose allocating. It was their burden to explain why it does disclose allocating. And this, our point is, is not enough. So, I don't think we should have this cross-reference back to a paragraph discussing another limitation and to expect us to just sort of infer, oh, this must be talking about allocating, and that's what the argument is. That's what we're saying is not sufficient. I realize you've already run out of your time, but by a long shot, I'm going to ask you about the most challenging issue. It's one you haven't even talked about, which is the combination of the representing limitations. So, let me ask you, I guess, two questions that are currently in my mind. One of them is, assuming you're quite right about the individual clients with their associated NAS devices having themselves separately, individually to represent, hey, I'm a NAS device, is right. How do you get to a claim construction, which is your claim construction, under which that representation has to be made by the NAS device to the user? And then I'm going to also ask you the question, even assuming you're right, why was the board not correct in its quite conclusory assertion as to both Ocean Store and as to Carter, and I must say I find Carter more challenging, but we have to face it because of Claim 17, that both of them show that even under your construction. So, let's start with the first, to the user device. I think I can actually answer both of Your Honor's questions in sort of the same theme. The claim recites representing, and so that raises the question, representing to what or to whom? The specification provides a clear answer. This is at Appendix 180, column 42, around line 57. It says the devices can provide storage capabilities that allow these devices to appear to users as dedicated NAS devices. And so the appearance is to the user or to the user device. And you equate representing with appearing? Yes, Your Honor. I think that's the most plausible way to read that, making a representation or having the appearance of a NAS device. So, a system in which one of a thousand distributed computers represent to some clearinghouse. I've got space available and the clearinghouse is what the user checks with and then starts to use this device. I think you assert that once the user sends material for storage to the client device and the client device stores it, that is automatically implicitly a representation. I'm not sure I would characterize it exactly like that, Your Honor. I think you say at pages 24 and 25 of your blue brief and later in your gray brief, as part of your claim construction argument, that when the user makes direct contact with the storage device, the storage device necessarily represents itself as a NAS device. And I think you do that in order to try to have your claim construction cover the fabric. That's correct. The claim construction does cover both the NAS device fabric and the server-assisted embodiments. And the reason that we know this, the passage that I believe Your Honor was referring to, the first is at column 44, lines 15 through 16, the NAS device is storing the data location information, would receive storage and access requests from user devices and would direct the user devices to the distributed devices storing the requested data. In other words, the user device is directed to where physically on the system their data is located. They're not locating the data in an abstract shared memory space. That's how OceanStore and Carter work. And this goes to, Judge Toronto, your second question. So, like 192 and 193 or 193 and 194, there are two places that have a description of a two-stage process, the second stage of which is that the user ultimately goes to the information store. Why does that not do that? You're referring to OceanStore, correct? Yes. That does not do that because what happens is the user communicates with node that's denoted N1 in the reference. The user communicates with N1 and says, do you have my data? N1 doesn't, but it finds where the data is in the system. Then once the data is found on, let's call it NX, thereafter messages are sent directly from N1 to NX, not from the user device directly to NX. And the reason that we know this is because OceanStore says, and this is at appendix 1523, it says, if replicas move around, only the network, not the users of the data, needs to know. And so the point is, the user devices neither know nor care where physically their data is residing on the system. I'm sorry, where in 1523 are you speaking from? I believe it's on the right side of the page near the top. What page are we talking about? This is appendix 1523. That's the 193 I was talking about. Correct. This is in the right column, the partial paragraph that begins the column. The last sentence is, if replicas move around, only the network, not the users of the data, needs to know. If replicas move around? A replica is simply a copy of a persistent object, which is how information is stored on OceanStore. So that's just saying, if replicas move around, the users don't need to know that. That doesn't necessarily answer the question of whether the user's device is directly communicating to the node that has the desired data. In particular, so the material at the bottom of the left column on 192 and then the top of the right column on 193 and the right column, top of the right, at 194, which is 1524. Let me focus on that latter one. About eight lines down, when someone searches for information, they climb the tree until they run into a pointer after which they, that's the searcher, route directly to the object. And I took that to mean the same thing as the bottom of the left column on the previous page. Routing is thus a two-phase process. Messages begin by routing from node to node along the distributed data structure until a destination is discovered. At that point, they route directly to the destination. And what is meant by that, I submit, is that they route directly to the destination from the initial node in one, in figure two, on page 193. And the reason we know that is because, to sort of go back to Jason's question, the replicas are the data. The system duplicates data for security and sort of recoverability purposes. But the replicas are what the user devices go to in order to access their data. And what the reference teaches is that when the replicas, i.e., the data moves around, the user devices don't need to know because they're interacting with a layer of abstraction that's atop the OceanStore system, and they don't see where the data is physically located on the system. Carter works the same way. As is clear from EMC's own petition describing the reference, the underlying details of the shared storage space are concealed behind a layer of abstraction. And what the user device sees is a virtual memory space that's divided into files that have no relation to the actual physical devices. When it comes to Carter, did you argue this argument about the abstract shared data storage space? I mean, I thought you argued more about you need to represent to the user device, and then secondly, you need that they waive the idea, the other side waive the idea, that each node has to act as a NAS device, where all the nodes can just comprise a single NAS device. Our point is that the Carter system, because of this layer of abstraction, the individual nodes on the system don't individually appear to the user device as a NAS device, which is required under our construction. And the layer of abstraction is why that representation doesn't happen. But it wasn't clear to me in your blue brief that you made that argument. I thought the argument that you made was that the other side's theory was that all of the devices together act as a single NAS device, rather than each node serving itself as a NAS device. I think that it's sort of a different way of saying the same thing, because our argument in the blue brief regarding Carter is at page 30 through 32. And we say after numeral two, Carter likewise does not disclose the plurality of distributed devices, each of which represents itself to the user device as its own separate NAS device. It describes only a shared memory that appears as a single large storage space. And then we cite certain admissions from EMT's petitions that describe Carter in precisely this way. And so our point is that the representation that Carter is making is I am one big NAS device rather than all these individual nodes on the system are individual NAS devices. Okay, why don't you sit down. We'll hear from the other side. Thank you. Good morning. May it please the Court. Cindy Freeland along with my colleague Dana Burwell. I represent EMC. I'll be arguing this morning also on behalf of our co-appellees Lenovo and NetApp and I'd like to start where my opposing counsel started with the allocating limitation. And consistent with the Court's questions, I think the 827 patent is a critical starting point for this issue. As IV's own expert agreed and as the Board emphasized in its final written decision, the 827 specification says nothing about how to allocate unused storage and IV's expert Dr. Shinoy admitted that at appendix 3166. Instead the patent simply refers to making storage available to other devices and we accordingly treated the limitation the same way. Does the patent either use the term allocate or some other word that means the same as reserve lockdown? Only in the claims, Your Honor. Only in the claims. And in fact Dr. Shinoy admitted that in his deposition appendix 3166. And a good analogy to this might be a hotel room. When a hotel rents out a room and makes that room available to a customer, it's necessarily assessing that the room is unused and allocating the room. That's how the patent treats the allocating step. It just simply says that the distributed devices are making their storage available to others and that's how our experts and the petitioners treated it in our petition. And critically, IV isn't challenging the substance of the Board's conclusion on allocating and it couldn't because the Board ultimately found that Ocean Store and Carter both teach allocating in at least as much detail as the patent itself. Instead they're focused on this purely procedural argument and they're trying to use it to impose a higher burden of disclosure on the prior art than is provided in the patent. And as we've set out in our brief, this procedural argument is legally defective for a number of reasons, starting with the statutory bar on appellate review in Section 314D. And I think this is really crystallized in IV's reply brief. They confirmed in that brief, just like confirmed in the argument, that the basis for their argument is solely whether the petitions set out a prima facie case for unpatentability. And as the Supreme Court confirmed in CUSA, so this is plainly barred by Section 314D. IV tries to avoid CUSA, it tries to avoid the statutory bar by trying to characterize its argument as a challenge to the sufficiency of the petition under Section 312. But the Supreme Court considered and rejected exactly that same argument in CUSA. In CUSA, like this case... Didn't the Supreme Court, and I'm gonna, this might be unfair, reject exactly the argument you are now making about in SAS in saying that there was, that this was an end run around the COSO bar on review of some issues because it said, of course we get to decide whether what's in the petition and what the board gets to do when it's part of the final written decision is, that's not barred by the institution review provision. Well actually CUSO addressed exactly the same issue as before the court now. CUSO involved a challenge to a petition under Section 312. In fact, CUSO based its challenge on exactly the same provision of Section 312. 312A3 that requires the petition to identify with particularity the basis for the challenge. And the Supreme Court found that that claim that Garman's petition was not pleaded with particularity under Section 312. That was, and I'll quote the Supreme Court here at page 2142. CUSA's claim that Garman's petition was not pleaded with particularity under Section 312. Again, the same section that I.D. cites here. Is little more than a challenge to the Patent Office's conclusion under Section 314A that the information presented in the petition warranted review. And the Supreme Court found that that was barred under 314D. So the argument that I.D. has brought to the court it's not only substantively wrong. The petitions treated the allocating step just like the patent treats the allocating step. It's also barred directly by CUSO. They are challenging the petition under Section 312. That's exactly the same argument that was made in CUSO. And the Supreme Court said it was not reviewable. In your view, would it be true that to take the extreme hypothetical that was discussed before. A petition says, here's a piece of prior art. It covers all the claims, claim elements. Doesn't say anything more. Patent owner says, you got to do better than that. And then you do it all on reply. And then they come up on appeal and say that's not good enough. You would say, sorry, can't look at that. The only question is what's the evidence in the record as a whole. Well, CUSO certainly realizes that there could be due process exceptions or shenanigan type exceptions. But I.D. hasn't claimed that any of those apply here. In fact, they've not challenged the substance of the board's decision at all. But the court was very clear that if you are complaining about the sufficiency of a petition under 312A3, which is exactly the complaint here, it is not reviewable. So I'll turn then to the representing limitation unless the court has any other questions on the allocating limitation. So on the representing limitation, I'd like to focus in particular on a critical confession by I.V. on appeal. Our primary argument to the board below on the representing limitation was that whatever it meant, it had to at least cover the second and third embodiments because those were the only embodiments that included the location information that was critical to the claims allowance. And I'm sorry, just so, my understanding is I.V.'s answer to that is once there is a direct, ultimate communication between the user and the source where the information is or the space is, that that source is necessarily representing itself to the user that's described in the fabric limitation and therefore they're not reading out the fabric embodiments. Well, I think that's fair. I would call that their reconstruction of their original construction on appeal. I mean, they clearly are trying to walk away from the argument they advocated below on a separate appearance and they're focused on the idea of a user device and a distributed device communicating directly. And if that's the case, I mean, if their new construction, their new argument is right, then the board was equally correct in concluding that under any construction, including I.V.'s construction, the claims are met by OceanStore and Carter because those are... Unless they're also right about the board being wrong in its reading of OceanStore and Carter. They say in neither one of those is it fairly taught that there is at the end of the day a direct connection between the requester and either space or information and the source of the space and the information. That's correct, Your Honor. They also challenged the board's conclusions that OceanStore and Carter both disclosed the limitation even under I.V.'s construction below. But those are both supported by more than substantial evidence. And I'd like to take them one by one. I'm sorry. Go back to the claim construction. Certainly, Your Honor. I think that, again, the critical concession that they've made here is that it would be absurd to exclude the second and third embodiments and that's what they've tried to do below and that's why the court rejected their construction. The court felt that you had to consider the claims in the context of the embodiments and it rejected a construction that would have excluded those embodiments. And it also went on to conclude that even if it had accepted I.V.'s claim construction arguments, then OceanStore and Carter... So, where is the best version of what I think maybe you say is a concession before the board from the other side that its construction would read out those embodiments? Well, they never... Well, we pointed out that they're... Our primary argument was you can't exclude the embodiments and they never responded to that. In fact, we tried to have their expert tell us his opinion on it and he refused to even offer an opinion. He couldn't answer the question about whether their construction would exclude the embodiments. Did I.V. say anything remotely like, of course we're not excluding those embodiments because the ultimate direct connection from the user to the resource meets this representation. That argument was never made below, Your Honor. That argument was made for the first time appeal and they now agree that it would be absurd to exclude the embodiments. What about their observations on cross-examination? Well, I think the observations were... 8579-80. And I just want to make sure I have this in front of me. Their observations, Your Honor, were simply refuting Dr. Arek's testimony on the first embodiment. I'm sorry, Your Honor, I just want to make sure I have the right appendix page. Oh, 8579 carrying over to 80. I think on this page, Your Honor, they are... If you look at the bottom of the page, bottom of 579-80, they're debating with Dr. Kuviotowicz said about the... They're complaining about his mischaracterization attempting to limit the claims to the stand-alone mass embodiment, but they never affirmatively agreed that the claims should cover the second and third embodiments. Well, they're contesting any allegation that their construction is limited to the stand-alone embodiment. So, I mean, to me, that means that they're disagreeing with you that their construction limits everything to just the stand-alone embodiment. Well, I'm not sure that an observation on a expert deposition would be the same as making the argument before the board. I mean, they never affirmatively explained to the board how their construction would include the second and third embodiments. And at this point, I think we're all in agreement that it would be absurd to exclude the second and third embodiments. And once you agree that the claims include the second and third embodiments, well, again, this... How does reading respectively under its ordinary way, I guess a one-to-one correspondence, necessarily exclude from the claim scope the embodiments related to the NAS fabric and the server implementation? Well, because the NAS fabric... I mean, in a NAS fabric, you're not going to have every single... You're not going to have a one-to-one correspondence between the distributed devices and the appearance of the NAS devices. Instead, every user is going to see some of the distributed devices as it's communicating with different distributed devices across the fabric. So there is certainly going to be in the OceanStore fabric, for example, you will have direct communications between user devices and particular distributed devices, but you're not going to have a situation of appearing as a dedicated NAS device as we think they meant by their separately appearing construction. But I think ultimately what the board concluded, and it's consistent with this court's accent packaging cases, that you can't look just at the word respectively in the abstract. You can't pull a definition out of a dictionary. You've got to look at what the word respectively means in the context of the claims and in the context of the specifications. And in that context, the board below found that certainly there has to be a correspondence between the distributed devices and the NAS devices, but it doesn't have to be a strict one-to-one correspondence. And that's consistent with the case law. And what do you mean by correspondence? Between the what and the what? Between the distributed devices and their appearance as NAS devices. Right. The board said that and I would say it struck me as nonsense. That there did not have to be a one-to-one correspondence? Anything textual about it. I understand an argument that says, all right, the text absolutely won't do it and aside from everything else, the word respectively is not an adjective. It was all an attributive adjective and I tried, for the life of me, to try to find a way in which the first thing was something other than a reference to the individual devices and I could not do it. Well, certainly... One could say, okay, in context, the text cannot govern. It will be overridden by the need to embrace the embodiments for which this language was added. And that's exactly what the court did in accent packaging and as I say, I think that the board construction... Unless when we look at the columns, it's quite clear that it's not overriding because aside from everything else, nothing in those two embodiments excludes and at least one of them expressly recites the ultimate direct connection between the user and the resource. And in that way, they're exactly like OceanStore and Carter. I think once you agree that the... Their argument does require both their claim construction and the conclusion that OceanStore and Carter don't need it. And that's a separate question. I guess, let's start talking about that question, okay? OceanStore and... Yeah, I think once you agree that if there is a user device that's communicating directly with distributed devices that there is a representation. Well then, OceanStore and Carter both do that and they both opt... They're NAS fabrics and we've selected them because they're so close to the NAS fabrics in the patent. They operate in exactly the same way. Let me ask you a couple of questions. One is it seems to me that there are different amounts of material in the two pieces of prior art to support that. That is, there are these couple of passages in OceanStore that might support that. They say it doesn't. I'm not sure I find anything in Carter that tells me that at the end of the day there is a user device to resource direct connection. Okay. I'd like to come back to OceanStore because I think it has more than the patent on this. But I'll start with Carter and what the board focused on in particular was Carter figure 11. Carter figure 11 shows and I can give you the appendix of that. The Carter figure 11 appears on appendix 3452 and it is also described in Carter on appendix 3416 and the board found in its opinion appendix at 97 that Carter figure 11 shows multiple commercially available PC nodes each mimicking a NAS device by making storage available and you can see that in figure 11 where you have one node on the left and another on the right and you can also see it in the description at appendix 3416 and I do think there's a confusion in IV's argument here your honor between what the user sees and what the user device sees. I mean even under their construction they're not saying that the user the person on the computer has to see multiple other devices. And what these underlying nodes are doing is they're communicating directly with each other. Where's that in Carter? The directly part which I think Well you can see it both in the description and you can see the What language specifically in the description? Let me start with figure 11. You can see them communicating directly over the network. You can also see the description at appendix 3416. It talks about the in particular figure 11 I'm looking at line 12 depicts a system that includes two nodes, a directory structures, pairs of memories. If you go down to line 17 the nodes are connected by the network. Line 19 they operate as discussed above. And then down to line 29 the specification discusses the directory pages being distributed distributedly stored across the memories saying that duplicates can exist and it talks about data moving between the memories on the different nodes. So you have a situation IV's new argument is that if you have two devices that are communicating directly with each other then you have the one device appearing to the other as one of these NAS devices. It's shown in Carter the board found that figure 11 in this description shows multiple commercially available PC nodes 406A and 406B each mimicking NAS devices by making their storage available to each other. And the board found the same thing for Ocean Store. I'll turn to Ocean Store unless there are further questions on Carter. So 97? Yes, 97 of the board's opinion. You said each mimicking NAS devices by making storage available to each other. Is that your words? No, those are not my words. It's from Appendix 98. And it's the last sentence of the first complete paragraph. We find that Carter discloses a shared memory subsystem on each node that allows the node to mimic a dedicated NAS device by making its storage available to other nodes. And then also, Your Honor, I think I missed the key other excerpt. I just wanted to show it to you quickly. Appendix 97, the very last paragraph on the page. Additionally, Carter's Figure 11 shows multiple commercially available PC nodes each mimicking NAS devices by making their storage available. Right. That's the place that I was looking at when I was wondering where the to each other comes from. And even the second one on 98 doesn't say to each other, which I think, if the issue is direct connection, this doesn't say that. These words would work for one thing,  don't  another. And that's the point. I don't see the board making a finding about that. Well, I think the board is making a finding that each mimics a NAS device by making storage available. It's a         available. And that is the plan. Let's move on to a more general example. In the Carter system, the user device and the user device is seeing another node appearing as a distributed device. That's why the board concluded what it did on Carter and why it focused on figure 11. When you have the nodes exchanging information with each other, you have the one node appearing as a NAV device mimicking a NAV device to the other. In both of the final written decisions, the board at the end of its very similar claim construction sections says, even if IV is right, the prior art doesn't in either case actually do that application when it's later discussing the representing claim limitation in the particular piece of prior art. I believe it does, John. I can point you to the relevant parts of the starting with how Ocean Store works, which is not part of the application of the representing claim limitation. Right. I think importantly there, they focus on the two-phase process of Ocean Store. But they never used that in applying the representing limitation as far as I can tell. I believe they do their discussion of how Ocean Store applies to representing begins at Appendix 30. And it continues to Appendix 33. Right. So where in there does it say, notice the two-stage process, this would satisfy this limitation even under IV's construction? Well, I think I don't use those words because the argument that IV is making is a new argument on appeal. I mean, they recast their entire construction on appeal. But I think what the board found though was that Ocean Store works exactly the way that IV now says on appeal it requires. And so      that Ocean Store is a new argument on appeal. And again, IV's argument on appeal is if you have a user device and a distributed device talking to the      new argument on appeal. And again, the board found that Ocean Store is a new argument on appeal. And again, the board found that Ocean Store is a new argument on appeal.  again, the board found is a new argument  appeal. And again, the on  And again, the board appeal. And again, the  found that Ocean Store  And again,  board found that Ocean on appeal. And again,  board